Slip Op. 07-159

UNITED STATES COURT OF INTERNATIONAL TRADE

```
_____
                               :
PARKDALE INTERNATIONAL LTD.,    :
                               :
              Plaintiff,        :
                               : Before: Richard K. Eaton, Judge
      v.                        :
                               : Court No. 07-00166
UNITED STATES,                  :
                               :
              Defendant.        :
                               :
_____
```

MEMORANDUM OPINION

[Plaintiff's Motion for a Preliminary Injunction granted.]

Dated: October 31, 2007

*Hunton & Williams, LLP* (*Richard P. Ferrin*), for plaintiff.

*Peter D. Keisler*, Assistant Attorney General; *Jeanne E. Davidson*, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (*Stephen C. Tosini*); Office of the Chief Counsel for Import Administration, United States Department of Commerce (*Mark B. Lehnardt*), for defendant.

Eaton, Judge: Before the court are the motion of plaintiff Parkdale International Ltd. ("Parkdale" or "plaintiff") for a preliminary injunction pursuant to USCIT Rule 65(a) and the response to Parkdale's motion of defendant the United States ("defendant").[1]  *See* Pl.'s Mot. Prelim. Inj. ("Pl.'s Mot."); Pl.'s Br. Supp. Mot. Prelim. Inj. ("Pl.'s Mem."); Def.'s Resp. Pl.'s Mot. Inj. ("Def.'s Resp."); Def.'s Suppl. Resp. Pl.'s Mot.

---

[1]  Pursuant to the temporary restraining order entered on May 18, 2007, the United States is presently restrained from liquidating the entries that are the subject of Parkdale's complaint.  *See Parkdale Int'l Ltd. v. United States*, Court No. 07-00166 (CIT May 18, 2007).

Court No. 07-00166                                        Page 2

Prelim. Inj. ("Def.'s Suppl. Resp.").  By its motion, Parkdale

seeks to enjoin liquidation of its entries of certain corrosion-

resistant carbon steel flat products ("CORE") from Canada,

entered on or after September 26, 2000.  For the following

reasons, the court finds that it has jurisdiction pursuant to 28

U.S.C. § 1581(i)(4) (2000)[2] and grants Parkdale's motion for a

preliminary injunction.


                          BACKGROUND

     Parkdale is an importer of CORE from Canada.  Compl. ¶ 3.

In the early 1990s, CORE was the subject of an antidumping

investigation.  As a result of that investigation, the United

States Department of Commerce ("Commerce" or the "Department")

issued an antidumping duty order on CORE from Canada (the

"Order") in 1993.  *See* Certain CORE and Certain Cut-to-Length

Carbon Steel Plate From Canada, 58 Fed. Reg. 44,162 (Dep't of

Commerce Aug. 19, 1993) (antidumping duty order).  The Order was

later amended in 1995.  *See* Certain CORE and Certain Cut-to-

Length Carbon Steel Plate From Canada, 60 Fed. Reg. 49,582 (Dep't

of Commerce Sept. 26, 1995) (amended final determination).

_____

        [2]    Subsection 1581(i)(4) grants this Court exclusive
jurisdiction to entertain "any civil action commenced against the
United States, its agencies, or its officers, that arises out of
any law of the United States providing for . . . (4)
administration and enforcement with respect to the matters
referred to in paragraphs (1)-(3) of this subsection and
subsections (a)-(h) of this section."  28 U.S.C. § 1581(i)(4).

Court No. 07-00166                                          Page 3

On September 1, 1999, Commerce and the United States
International Trade Commission ("ITC" or the "Commission")
commenced a "sunset review"[3] of the Order, and determined,
respectively, that revocation of the Order was likely to lead to
the continuation or recurrence of dumping and material injury to
an industry in the United States.  Thus, Commerce published
notice of the continuation of the Order in the Federal Register,
which by its terms was effective as of December 15, 2000.  *See*
Continuation of Antidumping and Countervailing Duty Orders on
Certain Carbon Steel Prods. from Australia, Belgium, Brazil,
Canada, Finland, France, Germany, Japan, South Korea, Mexico,

---

[3]     Administrative reviews, including five-year or "sunset"
reviews, are covered in § 1675 of Title 19 of the United States
Code.  Subsection 1675(c) provides the general rule for sunset
reviews:

> Notwithstanding subsection (b) of this
> section and except in the case of a
> transition order defined in paragraph (6), 5
> years after the date of publication of—
>
> (A) . . . an antidumping duty order
> . . . or
>
> (C) a determination under this
> section to continue an order . . .,
>
> [Commerce] and the Commission shall conduct a
> review to determine, in accordance with . . .
> [19 U.S.C. § 1675a], whether revocation of
> the . . . antidumping duty order . . . would
> be likely to lead to continuation or
> recurrence of dumping . . . and of material
> injury.

19 U.S.C. § 1675(c)(1) (2000).

Court No. 07-00166                                    Page 4

Poland, Romania, Spain, Sweden, Taiwan, and the United Kingdom,

65 Fed. Reg. 78,469, 78,470 (Dep't of Commerce Dec. 15, 2000)

(notice).

Five years later, on November 1, 2005, Commerce and the ITC

commenced the second sunset review of the Order. *See* Initiation

of Five-year ("Sunset") Revs., 70 Fed. Reg. 65,884 (Dep't of

Commerce Nov. 1, 2005) (notice).  In the second sunset review,

while Commerce determined that revocation of the Order would

likely result in the continuation or recurrence of dumping, the

ITC determined that revocation of the Order would not be likely

to lead to the continuation or recurrence of material injury to a

domestic industry within a reasonably foreseeable time. *See*

Certain Carbon Steel Prods. From Australia, Belgium, Brazil,

Canada, Finland, France, Germany, Japan, Korea, Mexico, Poland,

Romania, Spain, Sweden, Taiwan, and the United Kingdom, 72 Fed.

Reg. 4529 (ITC Jan. 31, 2007) (final determination).[4]  As a

result, the Order was revoked.  *See* 19 C.F.R. § 351.218(a) (2006)

(providing for revocation of an order based on a sunset review if

either Commerce's or the ITC's determination is negative);

---

[4]      The full text of the ITC's final determination is
contained in Volumes I and II of Certain Carbon Steel Products
from Australia, Belgium, Brazil, Canada, Finland, France,
Germany, Japan, Korea, Mexico, Poland, Romania, Spain, Sweden,
Taiwan, and the United Kingdom, USITC Pub. 3899, Inv. Nos.
AA1921-197 (Second Rev.); 701-TA-319, 320, 325-327, 348, and 350
(Second Rev.); and 731-TA-573, 574, 576, 578, 582-587, 612, and
614-618 (Second Rev.) (Jan. 2007).

Court No. 07-00166                                    Page 5

Certain CORE from Australia, Canada, Japan, and France, 72 Fed.

Reg. 7010 (Dep't of Commerce Feb. 14, 2007) (notice of

revocation) ("Revocation Notice").  In its Revocation Notice,

Commerce stated that "[p]ursuant to [19 U.S.C. § 1675(d)(2)][5] and

19 C.F.R. § 351.222(i)(2)(i), the effective date of revocation is

December 15, 2005 (i.e., the fifth anniversary of the date of

publication in the Federal Register of the notice of continuation

of the [Order])."  Revocation Notice, 72 Fed. Reg. at 7011.

Parkdale then brought this action pursuant to the

Administrative Procedure Act, 5 U.S.C. § 702 (2000).[6]  Parkdale

seeks judicial review of the effective date of the Revocation

Notice and invokes the Court's residual jurisdiction provision,

28 U.S.C. § 1581(i)(4).  Compl. ¶¶ 1, 2.  Parkdale insists that

_____

[5]      This subsection provides that Commerce "shall revoke"
an order unless two conditions are met:

> (A) [Commerce] makes a determination that
> dumping . . . would be likely to continue or
> recur, and
>
> (B) the Commission makes a determination that
> material injury would be likely to continue
> or recur as described in [19 U.S.C.
> § 1675a(a)].

19 U.S.C. § 1675(d)(2).

[6]      The Administrative Procedure Act provides that a person
who has suffered a legal wrong or has been "adversely affected or
aggrieved by agency action within the meaning of a relevant
statute," 5 U.S.C. § 702, may seek judicial review of "final
agency action for which there is no other adequate remedy in a
court . . . ."  Id. § 704.

the revocation of the Order should be effective as of September
26, 2000, i.e., the fifth anniversary of the September 26, 1995
amendment to the Order, not December 15, 2005, as Commerce found.
Compl. ¶ 3; Pl.'s Mot. 6 n.1.  By its motion, Parkdale argues
that without a preliminary injunction in place during the
pendency of this action its entries, that are covered in the
complaint, will be subject to liquidation, which would render its
underlying claim moot.  Pl.'s Mot. 3.  Defendant opposes
Parkdale's motion, arguing that the Court does not have
jurisdiction to hear Parkdale's underlying claim, and that, in
any event, Parkdale has failed to establish that a preliminary
injunction is warranted here.  Def.'s Resp. 1.

STANDARD OF REVIEW

    Parkdale bears the burden of establishing that a preliminary
injunction is warranted in light of four factors: (1) the
likelihood that Parkdale will succeed on the merits of its claim;
(2) that Parkdale will suffer irreparable harm without the
requested injunctive relief; (3) that the balance of hardships
tips in Parkdale's favor; and (4) that granting the requested
relief would not be contrary to the public interest.  *See FMC
Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993) (citing,
*inter alia*, *Zenith Radio Corp. v. United States*, 710 F.2d 806,
809 (Fed. Cir. 1983)).  In determining whether the movant has

Court No. 07-00166                                               Page 7

carried its burden and satisfied the four-part test, "[n]o one
factor, taken individually, is necessarily dispositive." *Id*.
Indeed, "[a]s a basic proposition, the matter lies largely within
the sound discretion of the [Court]." *Id*. (citations omitted).


                              DISCUSSION

I.   Likelihood of Success on the Merits

     A.   The Court Has Jurisdiction
          Under 28 U.S.C. § 1581(i)(4)

     The Court of Appeals for the Federal Circuit has held that
"[t]he question of jurisdiction closely affects the [movant]'s
likelihood of success on its motion for a preliminary
injunction." *U.S. Ass'n of Imps. of Textiles & Apparel v. United
States Dep't of Commerce*, 413 F.3d 1344, 1348 (Fed. Cir. 2005).
In its complaint, Parkdale alleges that the Court has
jurisdiction under 28 U.S.C. § 1581(i)(4) to hear its challenge
to "Commerce's implementation date of the revocation of the
[Order], pursuant to the determination by the [ITC] that
revocation of this antidumping duty order would not be likely to
lead to continuation or recurrence of material injury to the U.S.
industry within a reasonably foreseeable time." Compl. ¶ 1.
Parkdale argues that providing notice that an order has been
revoked is a "ministerial act," not a reviewable determination
under 19 U.S.C. § 1516a (2000), and that therefore jurisdiction
under 28 U.S.C. § 1581(c) is either not available, or is

Court No. 07-00166                                    Page 8

"manifestly inadequate."  Pl.'s Mem. 3-5.  Parkdale insists the

Court has jurisdiction to hear its claim under § 1581(i)(4) based

on the reasoning set forth in *Canadian Wheat Board v. United

States*, 31 CIT __, 491 F. Supp. 2d 1234 (2007) ("*CWB*").  Pl.'s

Mem. 4.  As the Federal Circuit stated in *Miller & Co. v. United

States*, 824 F.2d 961, 963 (Fed. Cir. 1987), "[s]ection 1581(i)

jurisdiction may not be invoked when jurisdiction under another

subsection of § 1581 is or could have been available, unless the

remedy provided under that other subsection would be manifestly

inadequate."  *Id*. (citation omitted); *see also CWB*, 31 CIT at __,

491 F. Supp. 2d at 1240.  Thus, the court must address, as an

initial matter, defendant's contention that jurisdiction under 28

U.S.C. § 1581(i)(4) is improper because, as defendant asserts,

plaintiff could have brought a claim challenging the Revocation

Notice under § 1581(c).

    Defendant argues that Commerce's decision to revoke the

Order is a final determination reviewable under 28 U.S.C.

§ 1581(c).  Defendant bases this argument on Commerce's statement

in the Revocation Notice that it was revoking the Order pursuant

to 19 U.S.C. § 1675(d)(2).  Because final determinations made

under § 1675 are expressly referenced in 19 U.S.C.

§ 1516a(a)(2)(B)(iii), defendant contends that 28 U.S.C.

§ 1581(c), which grants this Court "exclusive jurisdiction of any

civil action commenced under [19 U.S.C. § 1516a]," was available

to Parkdale as the proper basis of the Court's jurisdiction.  *See*
28 U.S.C. § 1581(c); *see also* Def.'s Resp. 3-4; Def.'s Suppl.
Resp. 4-6.

The court finds that the reasoning in *CWB* addresses the
jurisdiction question presented here and, as in *CWB*, finds that
the court has jurisdiction to hear Parkdale's claim under 28
U.S.C. § 1581(i)(4).  In *CWB*, the ITC issued a negative material
injury determination with respect to imports of Canadian hard red
spring wheat after a North American Free Trade Agreement
("NAFTA") panel[7] remanded the ITC's original, affirmative injury
determination.  Accordingly, Commerce published a *Timken* notice[8]
and a notice of revocation of the antidumping and countervailing
duty orders on Canadian hard red spring wheat.

The notice of revocation indicated that Commerce would

---

[7]     The court notes that the procedural histories of *CWB*
and the instant case differ because in *CWB* the parties appealed
the ITC's material injury decision to a NAFTA panel instead of
this Court, as is their right under article 1904 of NAFTA.  This
distinction does not compel a different result in this case
because in both cases, plaintiffs sought judicial review of legal
conclusions Commerce stated in the notices of revocation, which
were not reached in the context of a reviewable determination.
*See* discussion *infra* at 11-13.

[8]     Title 19 U.S.C. § 1516a(c)(1) requires that Commerce
publish notice of a Court decision "not in harmony" with an
original agency determination.  The same rule applies with a
NAFTA panel decision.  *See* 19 U.S.C. § 1516a(g)(5)(B).
Subsection 1516a(c) was the subject of *Timken Co. v. United
States*, 893 F.2d 337, 340 (Fed. Cir. 1990), and notices issued
pursuant to that subsection have come to be known as *Timken*
notices.  *See CWB*, 31 CIT at __, 491 F. Supp. 2d at 1238 n.4.

instruct Customs and Border Protection to liquidate, without

duties, only those imports that entered the United States after

the effective date of the *Timken* notice.  Entries made prior to

the effective date of the *Timken* notice would be liquidated at

the then-prevailing rates under the antidumping and

countervailing duty orders, even though the foundation of the

orders had been removed.  Plaintiff sought judicial review of

Commerce's legal conclusion that the *Timken* notice would have

prospective effect only and sought an injunction to prevent the

liquidation of entries entered prior to the date of the *Timken*

notice.  *See CWB*, 31 CIT at __, 491 F. Supp. 2d at 1236-39.

     The *CWB* Court held that Commerce's conclusion that

liquidation without duties would be prospective only, stated for

the first time in the notice of revocation, was not a reviewable

final determination within the meaning of 19 U.S.C.

§ 1516a(a)(2)(B)(i):

          Commerce's arguments notwithstanding, the
          court finds that the Notice of Revocation is
          not a reviewable final determination under 19
          U.S.C. § 1516a and, as a result, plaintiff
          had no remedy available to it under 28 U.S.C.
          § 1581(c).  While the agency may have had
          internal discussions regarding the contents
          of the Notice of Revocation, its legal
          conclusion that the revocation of the orders
          should be prospective only, was reached
          without notice, public hearings or briefing
          by the parties and was outside of the
          reviewable determinations found in 19 U.S.C.
          § 1516a.  In other words, the Notice of
          Revocation "was *not* made during any
          proceeding that would culminate in a

> determination for which judicial review is
> provided under 19 U.S.C. § 1516a and 28
> U.S.C. § 1581(c)."

*CWB*, 31 CIT at __, 491 F. Supp. 2d at 1241-42 (quoting *Ceramica*

*Regiomontana, S.A. v. United States*, 5 CIT 23, 26, 557 F. Supp.

596, 600 (1983) (emphasis in original)).  Thus, because the

decision at issue was not a "final determination" subject to

judicial review under 19 U.S.C. § 1516a, the Court found that 28

U.S.C. § 1581(c) was not available as a basis for jurisdiction.

As a result, the Court held that jurisdiction was proper under 28

U.S.C. § 1581(i)(4) to hear the plaintiff's challenge to

Commerce's administration and enforcement of the ITC's negative

injury determination.  *Id.* at __, 491 F. Supp. 2d at 1243.  That

is, the Court had the authority to hear a challenge to Commerce's

decision that liquidation of entries would be prospective only

under § 1581(i) because relief was not available under § 1581(c).

As a result, it also had jurisdiction to issue an injunction

while the case was being heard.

Defendant attempts to distinguish this case from *CWB* on the

ground that *CWB* addressed the meaning of "final determination" in

the context of § 1516a(a)(2)(B)(i), not § 1516a(a)(2)(B)(iii).

For defendant, because the effective date of the revocation was

set in the context of a sunset review rather than following a

finding that the Order was invalid *ab initio*, CWB is not valid

precedent.  Def.'s Resp. 8.  The court is not persuaded by this

argument.  Both the antidumping/countervailing duty determination

that was the subject of *CWB* and the sunset review at issue here

are listed as reviewable by the Court pursuant to 19 U.S.C.

§ 1516a.  While § 1516a references decisions made pursuant to

§ 1671d and § 1673d as well as sunset reviews, it does so in the

context of providing for judicial review of "[f]inal

determinations" made pursuant to those sections.  *See* 19 U.S.C.

§§ 1516a(a)(2)(B)(i) (providing for judicial review of "final

affirmative determinations by [Commerce] and by the Commission

under section 1671d or 1673d . . . including any negative part of

such a determination . . .") & (iii) (providing for judicial

review of "[a] final determination . . . by [Commerce] or the

Commission under . . . [19 U.S.C. § 1675]").

     Just as in *CWB*, however, the requirement that Commerce's

action be a "final determination" reviewable under 19 U.S.C.

§ 1516a is not satisfied here.  As with the Commerce conclusion

in *CWB* that liquidation, without duties, of the entries covered

by the orders at issue there would be prospective only,

Commerce's conclusion here concerning the effective date of

revocation was not a part of the ITC's final negative injury

determination.  Rather, it was a conclusion made by Commerce

after the final determination was issued.  *See Norsk Hydro Can.,*

*Inc. v. United States*, 472 F.3d 1347, 1355 (Fed. Cir. 2006)

(stating this Court must "look to the true nature of [an] action"

Court No. 07-00166                                    Page 13

in determining jurisdiction) (internal quotation marks & citation
omitted).  Thus, as in *CWB*, Commerce's legal conclusion that the
revocation of the Order would be effective as of December 15,
2005, "was reached without notice, public hearings or briefing by
the parties and was outside of the reviewable determinations
found in 19 U.S.C. § 1516a."  *CWB*, 31 CIT at __, 491 F. Supp. 2d
at 1242.  In other words, the Revocation Notice "was *not* made
during any proceeding that would culminate in a determination for
which judicial review is provided under 19 U.S.C. § 1516a and 28
U.S.C. § 1581(c)."  *Ceramica Regiomontana, S.A.*, 5 CIT at 26, 557
F. Supp. at 600 (emphasis in original).  Accordingly, the court
concludes that jurisdiction under 28 U.S.C. § 1581(c) was not
available to Parkdale to challenge the Revocation Notice.

     The court further concludes that jurisdiction under 28
U.S.C. § 1581(i)(4) is available to Parkdale.  Again, *CWB* is
instructive.  In *CWB*, the Court analyzed *Consolidated Bearings
Co. v. United States*, 348 F.3d 997 (Fed. Cir. 2003), and *Shinyei
Corp. of America v. United States*, 355 F.3d 1297 (Fed. Cir.
2004), where the Federal Circuit held that § 1581(i) provided the
jurisdictional basis for review of Commerce's liquidation
instructions.  *See CWB*, 31 CIT at __, 491 F. Supp. 2d at 1242-43.
As the *CWB* Court explained:

          In *Consolidated Bearings*, an importer
     challenged Commerce's liquidation
     instructions to Customs, seeking to compel

Court No. 07-00166                                    Page 14

        the application of the antidumping duty rates
        from the Department's final determination to
        its merchandise.  The Federal Circuit
        confirmed jurisdiction under 28 U.S.C.
        § 1581(i) after finding that "Consolidated
        [did] not object to the final results.
        Rather Consolidated [sought] application of
        those final results to its entries . . . ."
        The Federal Circuit based its finding on its
        conclusion that plaintiff's "case involve[d]
        a challenge to [Commerce's] 1998
        instructions, which is not an action defined
        under [19 U.S.C. § 1516a]."  The Federal
        Circuit further found that "[b]ecause
        Consolidated [was] not challenging the final
        results, [28 U.S.C. § 1581(c)] is not and
        could not have been a source of jurisdiction
        for this case."  Finally, after concluding
        that jurisdiction did not lie pursuant to
        § 1581(c), the Federal Circuit found the case
        "squarely within the provisions of subsection
        (i)."  Specifically, the Federal Circuit
        observed that "Commerce's liquidation
        instructions direct Customs to implement the
        final results of administrative reviews.
        Consequently, an action challenging
        Commerce's liquidation instructions is not a
        challenge to the final results, but a
        challenge to the 'administration and
        enforcement' of those final results."

*Id.* at __, 491 F. Supp. 2d at 1242-43 (quoting *Consol. Bearings*

*Co.*, 348 F.3d at 1002; alterations in original).  The *CWB* Court

continued:

        Likewise, the Federal Circuit found in
        *Shinyei Corp. of America v. United States*,
        355 F.3d 1297 (Fed. Cir. 2004), that
        Commerce's liquidation instructions were
        reviewable under 28 U.S.C. § 1581(i)(4):

            As we have recently held, a
            challenge to Commerce instructions
            on the ground that they do not
            correctly implement the published,
            amended administrative review

>               results, "is not an action defined
>               under [19 U.S.C. § 1516a] of the
>               Tariff Act." [19 U.S.C.
>               § 1516a] is limited on its face to
>               the judicial review of
>               "determinations" in countervailing
>               duty and antidumping duty
>               proceedings.

*Id.* at __, 491 F. Supp. 2d at 1243 (quoting *Shinyei Corp. of Am.*,
355 F.3d at 1309; alterations in original).  Upon concluding its
review of the *Consolidated Bearings* and *Shinyei* cases, the *CWB*
Court reasoned that "if a legal conclusion, found in liquidation
instructions based on Commerce's own final determination, is
reviewable under 28 U.S.C. § 1581(i), then a legal conclusion
found in the Notice of Revocation resulting from an ITC final
determination is too."  *Id.* at __, 491 F. Supp. 2d at 1243.

    As with the challenges to agency actions in *Consolidated
Bearings*, *Shinyei* and *CWB*, Parkdale's challenge to the Revocation
Notice is a challenge to the "administration and enforcement" of
the ITC's final negative injury determination in a sunset review,
namely, the effective date of revocation of the Order, not to the
ITC's final determination.  Indeed, "as the prevailing party,
[Parkdale] had no dispute with the ITC's final negative
determination that resulted in the [Revocation Notice]."  *CWB*, 31
CIT at __, 491 F. Supp. 2d at 1242.  The court therefore finds
that Commerce's conclusion that the revocation shall be effective
as of the fifth anniversary of the publication of notice of
continuation of the Order, rather than the fifth anniversary of

Court No. 07-00166                                        Page 16

publication of the original Order, is reviewable under 28 U.S.C.

§ 1581(i)(4).


        B.    Parkdale Has Sufficiently Demonstrated
              a Likelihood of Success on the Merits

        Having found jurisdiction in this case, the court next turns

to whether Parkdale has sufficiently demonstrated that it is

likely to succeed on the merits of its claim.  The standard that

a party seeking a preliminary injunction must satisfy to

establish a likelihood of success on the merits remains unsettled

by the Federal Circuit; however, several competing standards have

been articulated: (1) whether the movant has raised "serious,

substantial, difficult, and doubtful" questions regarding the

merits; (2) "[whether] the likelihood of success and harm-related

prongs are viewed as a continuum in which the required showing of

harm varies inversely with the required showing of

meritoriousness"; and (3) "[whether] the movant [has

demonstrated] at least a fair chance of success on the

merits . . . ."  *U.S. Ass'n of Imps. of Textiles & Apparel*, 413

F.3d at 1347 (internal quotation marks omitted).  This Court

recently observed,

                The [Federal Circuit] appears to have
                accepted a sliding scale approach regarding
                the standard for likelihood of success on the
                merits: the greater the potential harm to the
                movant if the court denies injunctive relief,
                the lesser the burden on the movant to make
                the required showing of likelihood of success

on the merits.

*Corus Staal BV v. United States*, 31 CIT __, __, 493 F. Supp. 2d
1276, 1283 n.10 (2007) (citing *Ugine & Alz Belg. v. United
States*, 452 F.3d 1289, 1293 (Fed. Cir. 2006); *Mikohn Gaming Corp.
v. Acres Gaming, Inc.*, 165 F.3d 891, 895 (Fed. Cir. 1998)).  In
any event, it is clear that the court must, at minimum, weigh
Parkdale's arguments in favor of its position against those
raised in opposition by defendant.  *See U.S. Ass'n of Imps. of
Textiles & Apparel*, 413 F.3d at 1347 ("[T]he movant's evidence
and arguments must actually be weighed against those of the
non-movant to determine whether the movant's likelihood of
success meets the applicable standard, whatever that standard may
be.") (citations & footnote omitted).

To understand the parties' arguments, a recitation of the
relevant statutes and regulations is necessary.  Title 19 U.S.C.
§ 1675 covers administrative reviews, including sunset reviews.
In the case of a review of a transition order, like the Order
here,[9] special rules apply.  *See* 19 U.S.C. § 1675(c)(6).  These

_____

[9]     A transition order is "an antidumping duty order under
[Title 19] . . . which [was] in effect on the date the [World
Trade Organization ("WTO")] Agreement enter[ed] into force with
respect to the United States."  19 U.S.C. § 1675(c)(6)(C).  The
WTO Agreement entered into force in the United States on January
1, 1995.  *See* Proclamation No. 6763, 60 Fed. Reg. 1007 (Jan. 4,
1995).  That date, January 1, 1995, shall be treated as the date
a transition order was issued, "if such order is based on an
investigation conducted by both [Commerce] and the Commission."
19 U.S.C. § 1675(c)(6)(D).  Here, the Order is a transition
                                                (continued...)

rules provide a schedule for the initiation and completion of

administrative reviews, including sunset reviews, subsequent

reviews and the revocation of transition orders:

    (A) Schedule for reviews of transition orders

        (i) Initiation

        [Commerce] shall begin its review
        of transition orders in the 42d
        calendar month after the date such
        orders are issued.  A review of all
        transition orders shall be
        initiated not later than the 5th
        anniversary after the date such
        orders are issued.

        (ii) Completion

        A review of a transition order
        shall be completed not later than
        18 months after the date such
        review is initiated.  Reviews of
        all transition orders shall be
        completed not later than 18 months
        after the 5th anniversary of the
        date such orders are issued.

        (iii) Subsequent reviews

        The time limits set forth in
        clauses (i) and (ii) shall be
        applied to all subsequent 5-year
        reviews of transition orders by
        substituting "date of the
        determination to continue such
        orders" for "date such orders are
        issued".

---

    [9](...continued)
order.  It was issued in 1993 and amended in September of 1995.
Thus was in effect as of January 1, 1995.  Moreover, it was based
on an investigation conducted by Commerce and the ITC, and
therefore is to be treated as issued on January 1, 1995.

Court No. 07-00166                                              Page 19

     (iv) Revocation and termination

     No transition order may be revoked
     under this subsection before the
     date that is 5 years after the date
     the WTO Agreement enters into force
     with respect to the United States.

19 U.S.C. § 1675(c)(6)(A).  Revocation of an order, regardless of

whether it is a transition order, is governed by 19 U.S.C.

§ 1675(d)(2), and shall occur when either Commerce or the ITC

makes a negative determination.  *See* 19 C.F.R. § 351.218(a).

Here, because the ITC made a negative injury determination in the

second sunset review, the Order was revoked.

    Subsection 351.222(i) of Commerce's regulations set out the

rules and procedures that Commerce must follow in revoking an

order based on a sunset review.  With respect to the effective

date of revocation, Commerce's regulations provide:

     (i) *In general*.  Except as provided in
     paragraph (i)(2)(ii) of this section, where
     [Commerce] revokes an order . . . , pursuant
     to . . . [19 U.S.C. § 1675(d)(2)] (see
     paragraph (i)(1) of this section), the
     revocation . . . will be effective on the
     fifth anniversary of the date of publication
     in the Federal Register of the order . . . .
     This paragraph also applies to subsequent
     sunset reviews of transition orders (see
     paragraph (i)(2)(ii) of this section and [19
     U.S.C. § 1675(c)(6)(A)(iii)]).

     (ii) *Transition orders*.  Where the Secretary
     revokes a transition order (defined in [19
     U.S.C. § 1675(c)(6)]) pursuant to . . . [19
     U.S.C. § 1675(d)(2)] (see paragraph (i)(1) of
     this section), the revocation . . . will be
     effective on January 1, 2000.  This paragraph
     does not apply to subsequent sunset reviews

Court No. 07-00166                                          Page 20

> of transition orders (see [19 U.S.C.
> § 1675(c)(6)(A)(iii)]).

19 C.F.R. § 351.222(i)(2)(i) & (ii).

It is Parkdale's position that 19 C.F.R. § 351.222(i)(2)(i)

unambiguously requires that revocation of the Order shall be

effective on the fifth anniversary of the *original Order*, which

Parkdale asserts is January 1, 2000, or at the latest September

26, 2000, and not on the "fifth anniversary of the date of

publication in the Federal Register of the *notice of continuation*

*of the [Order]*," i.e., December 15, 2005, as Commerce concluded.

Revocation Notice, 72 Fed. Reg. at 7011 (emphasis added).

Parkdale argues:

> Commerce's interpretation, that the effective
> date is five years after publication of
> <u>continuation of</u> the antidumping duty order,
> is squarely contradicted by the regulation
> itself.  As if the phrase "the
> revocation . . . will be effective on the
> fifth anniversary of the date of publication
> in the Federal Register of the order" is not
> clear enough, the next sentence of the [19
> C.F.R. § 351.222(i)(2)(ii)] drives the point
> home.  The next sentence says that "<u>[t]his</u>
> <u>paragraph also applies</u> to subsequent sunset
> reviews of transition orders."  This sentence
> leaves no mistake but that the drafters of
> the regulation meant for the five years to be
> counted from the date of the antidumping duty
> order itself, even if the revocation was
> pursuant to a subsequent review of a
> transition order.

Pl.'s Mem. 11 (emphasis in original; internal citation omitted).

Thus, Parkdale contends that the plain language of the regulation

demonstrates that it is likely to succeed on the merits of its

Court No. 07-00166                                           Page 21

claim.

        For its part, defendant argues that "the statutory and

regulatory scheme, as well as Commerce's consistent past

practice,[10] demonstrate that revocation of a transition order—

pursuant to a second or later sunset review—is effective from the

fifth anniversary of the preceding sunset-review notice

continuing the order."  Def.'s Resp. 10 (footnote omitted).

Specifically, defendant contends:

            [B]ecause 19 C.F.R. § 351.222(i)(2)(i)
            references 19 U.S.C. § 1675(c)(6)(A)(iii),
            Commerce's revocations of transition orders,
            pursuant to second or later sunset reviews,
            such as that which is the subject of
            Parkdale's claim here, are effective from the
            fifth anniversary of the preceding sunset-
            review notice continuing the order. . . .
            [P]ursuant to 19 U.S.C. § 1675(c)(6)(A)(iii),
            the statute substitutes the "'date of the
            determination to continue such orders' for
            'date such orders are issued'" in the conduct
            of subsequent sunset reviews.  That is, when
            revoking transition orders in which there
            have been subsequent reviews, Commerce
            revokes not from "the fifth anniversary of
            the date of publication in the Federal
            Register of the order," but from the fifth
            anniversary of the date of the determination
            to continue the order.  This is the only
            possible interpretation that gives meaning to
            the reference to 19 U.S.C.
            § 1675(c)(6)(A)(iii) in the revocation
            provision.

Def.'s Resp. 11 (citations omitted).

_____

        [10]   Defendant cites Commerce's decision in Furfuryl Alcohol
from Thailand, 72 Fed. Reg. 9729 (Dep't of Commerce Mar. 5, 2007)
(final results of second sunset review and revocation of order),
among others.  See Def.'s Resp. 12 n.2.

     The court finds that Parkdale's argument is sufficient to
satisfy this factor of the test for injunctive relief.  At issue
is the meaning of subsection 351.222(i)(2)(i).  The parties
construe this subsection differently.  The court finds that
Parkdale has raised a substantial question regarding the merits
of its claim and has demonstrated "at least a fair chance of
success on the merits . . . ."  *U.S. Ass'n of Imps. of Textiles &*
*Apparel*, 413 F.3d at 1347 (internal quotation marks omitted).
Moreover, as discussed in Part II, *infra*, the potential harm to
the movant if the court were to deny injunctive relief is
indisputable.  Therefore, based on the Federal Circuit's "sliding
scale" approach, Parkdale's "burden . . . to make the required
showing of likelihood of success on the merits" is lessened.
*Corus Staal BV*, 31 CIT at __, 493 F. Supp. 2d at 1283 n.10.  The
court therefore finds the likelihood of success on the merits
factor tips in favor of Parkdale.


II.  Irreparable Harm

     Federal Circuit case law favors the granting of a
preliminary injunction where it is clear that irreparable harm
would result absent the injunction.  *See Ugine & Alz Belg.*, 452
F.3d at 1293 (citing, *inter alia*, *Corus Group PLC v. Bush*, 26 CIT
937, 942, 217 F. Supp. 2d 1347, 1353-54 (2002), where the Court
stated, "In reviewing the factors, the court employs a 'sliding

scale.'  Consequently, the factors do not necessarily carry equal

weight.  The crucial factor is irreparable injury.").  There can

be little doubt that Parkdale would suffer irreparable harm if

liquidation of the entries entered on or after September 26,

2000, were not enjoined and were it to prevail on the merits.

*CWB*, 31 CIT at __, 491 F. Supp. 2d at 1246 ("It has long been

established that liquidation renders without meaning a movant's

'statutory right to obtain judicial review' with respect to the

liquidated entries and, thus, that the 'consequences of

liquidation do constitute irreparable injury.'") (quoting *Zenith*,

710 F.2d at 810).  Indeed, the parties do not dispute this point.

Thus, the court finds this factor favors granting a preliminary

injunction in this case.


III. Balance of Hardships

     "In evaluating whether to grant a motion for injunctive

relief, the court must 'determine which party will suffer the

greatest adverse effects as a result of the grant or denial of

the preliminary injunction.'"  *Nat'l Fisheries Inst., Inc. v.*

*United States Bureau of Customs & Border Protection*, 30 CIT __,

__, 465 F. Supp. 2d 1300, 1329 (2006) (quoting *Ugine-Savoie Imphy*

*v. United States*, 24 CIT 1246, 1250, 121 F. Supp. 2d 684, 688

(2000)).  Parkdale contends that the hardship it would suffer if

a preliminary injunction were not granted, i.e., the possibility

Court No. 07-00166                                    Page 24

of its claims being rendered moot by liquidation of its entries,

is comparably much greater than any inconvenience defendant might

suffer by continuing to suspend liquidation pending the court's

decision on the merits.  *See* Pl.'s Mot. 7.  The defendant, which

has plaintiff's deposits in its possession, does not seriously

contend that this is not the case.  The court thus finds this

factor tips in favor of granting Parkdale's motion.


IV.  Public Interest

      "[T]he public interest is served by ensuring that [Commerce]

complies with the law, and interprets and applies [the]

international trade statutes uniformly and fairly."  *Ugine-Savoie*

*Imphy*, 24 CIT at 1252, 121 F. Supp. 2d at 690 (internal quotation

marks & citations omitted; third alteration in original).

Parkdale's complaint raises an important question concerning

whether Commerce complied with the law when it concluded that the

effective date of the Revocation Notice was the fifth anniversary

of the publication of notice of the continuation of the Order,

rather than of the original Order.  Thus, the public's interest

in ensuring that duties are assessed in accordance with law

favors granting Parkdale's motion.

Court No. 07-00166                                          Page 25

                              CONCLUSION

     For the foregoing reasons, the court finds that it has

jurisdiction to hear Parkdale's claim under 28 U.S.C.

§ 1581(i)(4).  In addition, the court finds that Parkdale has

demonstrated its entitlement to injunctive relief.  Therefore, it

is hereby

     ORDERED that Parkdale's motion for a preliminary injunction

is granted; and it is further

     ORDERED that the parties consult and jointly submit to the

court the form of the preliminary injunction on or before

November 9, 2007.  The parties' submission shall be made to Casey

Ann Cheevers, Case Manager, United States Court of International

Trade, One Federal Plaza, New York, New York, 10278.




                                    /s/Richard K. Eaton
                                      Richard K. Eaton



Dated:     October 31, 2007
           New York, New York

# NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

Tina Potuto Kimble
Clerk of the Court

Date: _____     By: _____
                                             Deputy Clerk